**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**RASHIDA GOLDEN,**

                    Plaintiff,                3:13-cv-1227
                                                          (GLS)

           v.

**CAROLYN W. COLVIN,**
Commissioner of Social
Security,

                    Defendant.
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Lachman, Gorton Law Firm | PETER A. GORTON, ESQ. |
| P.O. Box 89 | |
| 1500 East Main Street | |
| Endicott, NY 13761-0089 | |
| | |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN | ELIZABETH D. ROTHSTEIN |
| United States Attorney | Special Assistant U.S. Attorney |
| 100 South Clinton Street | |
| Syracuse, NY 13261 | |
| | |
| Steven P. Conte | |
| Regional Chief Counsel | |
| Social Security Administration | |
| Office of General Counsel, Region II | |
| 26 Federal Plaza, Room 3904 | |
| New York, NY 10278 | |

**Gary L. Sharpe
Chief Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Rashida Golden challenges the Commissioner of Social Security's denial of Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Golden's arguments, the court affirms the Commissioner's decision and dismisses the complaint.

## II. Background

On April 4, 2011, Golden filed an application for SSI under the Social Security Act ("the Act"), alleging disability since February 1, 2011. (Tr.[1] at 53, 125-32.) After her application was denied, (*id.* at 62-65), Golden requested a hearing before an Administrative Law Judge (ALJ), which was held on June 21, 2012, (*id.* at 25-52, 69-71). On August 14, 2012, the ALJ issued an unfavorable decision denying the requested benefits which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review. (*Id.* at 1-6, 9-24.)

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 10.)

Golden commenced the present action by filing her complaint on October 2, 2013 wherein she sought review of the Commissioner's determination. (Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 9, 10.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 14, 15.)

### III. Contentions

Golden contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 14 at 9-15.) Specifically, Golden claims that the ALJ erred in: (1) assessing her severe impairments; (2) failing to include any non-exertional limitations in her residual functional capacity (RFC) determination; and (3) improperly accounting for the effects of her obesity. (*Id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and her decision is also supported by substantial evidence. (Dkt. No. 15 at 4-14.)

### IV. Facts

The court adopts the parties' undisputed factual recitations. (Dkt. No. 14 at 1-9; Dkt. No. 15 at 2.)

### V. Standard of Review

The standard for reviewing the Commissioner's final decision under

42 U.S.C. § 405(g)[2] is well established and will not be repeated here.  For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI.  Discussion

### A.  Severity Determination

According to Golden, the ALJ erred in failing to find her macromastia[3] and mental impairments severe under the regulations.  (Dkt. No. 14 at 9-10, 14-15.)  The Commissioner, on the other hand, argues that the ALJ correctly determined the severity of Golden's impairments, and any error is, at most, harmless because the ALJ found Golden to have other severe impairments and continued beyond this step of the sequential evaluation.  (Dkt. No. 15 at 4-9.)  The court agrees with the Commissioner.

At step two of the sequential analysis, the ALJ must determine

---

[2] 42 U.S.C. § 1383(c)(3) renders section 405(g) applicable to judicial review of SSI claims.

[3] Macromastia is the "oversize of the breasts or mammae."  Dorland's Illustrated Medical Dictionary 977 (28th ed. 1994).

whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 416.920(a)(4)(ii). A finding of not severe is appropriate when an impairment, or combination of those impairments "does not significantly limit [the claimant's] physical or mental ability to do basic work activities." *Id.* § 416.921(a). Basic work activities are "the abilities and aptitudes necessary to do most jobs," including: "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling" as well as "[u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting." *Id.* § 416.921(b). "The 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, itself, sufficient to deem a condition severe." *Bergeron v. Astrue*, No. 09-CV-1219, 2011 WL 6255372, at *3 (N.D.N.Y. Dec. 14, 2011) (quoting *McConnell v. Astrue*, No. 6:03-CV-0521, 2008 WL 833968, at *2 (N.D.N.Y. Mar. 27, 2008)). The omission of an impairment at step two may be deemed harmless error, particularly where the disability analysis continues and the ALJ later considers the impairment in her RFC determination. *See*

5

*Tryon v. Astrue*, No. 5:10-CV-537, 2012 WL 398952, at *4 (N.D.N.Y. Feb. 7, 2012); *see also Plante v. Astrue*, No. 2:11-CV-77, 2011 WL 6180049, at *4 (D. Vt. Dec. 13, 2011).

With respect to mental impairments, an ALJ's decision must reflect her application of the "special technique" set out in 20 C.F.R. § 416.920a, which necessitates her consideration of "four broad functional areas" that include: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 416.920a(c)(3). The first three areas are rated on a five-point scale: "[n]one, mild, moderate, marked, and extreme." *Id.* § 416.920a(c)(4). "[I]f the degree of limitation in each of the first three areas is rated 'mild' or better, and no episodes of decompensation are identified, then the [ALJ] generally will conclude that the claimant's mental impairment is not 'severe.'" *Kohler v. Astrue*, 546 F.3d 260, 266 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1520a(d)(1)).

Here, at step two, the ALJ determined that Golden suffered from the following severe impairments: lumbrosacral degenerative disc disease and obesity. (Tr. at 14.) The ALJ did not specifically mention Golden's macromastia, but as the Commissioner points out, (Dkt. No. 15 at 4),

6

Golden's treating physician, Darlene Denzien, did not indicate macromastia as a diagnosis upon which she based her opinion of Golden's functional limitations. (Tr. at 408.) Further, although Dr. Denzien's treatment notes indicate that Golden's macromastia contributed to her upper back pain, the ALJ thoroughly considered Golden's back pain in determining her RFC. (*Id.* at 16-19, 309-10.)

Turning to Golden's mental impairments, the ALJ concluded that Golden suffered mild restrictions in her activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in concentration, persistence, and pace, and no episodes of decompensation. (*Id.* at 15.) The ALJ based her determination on Golden's own reports of her daily activities, her lack of treatment, and the opinion of consulting examiner Mary Ann Moore. (*Id.* at 14-16.) Golden claims that the ALJ discounted portions of Dr. Moore's opinion that are consistent with her allegations due to an error of fact. (Dkt. No. 14 at 6, 10.) According to Golden, the ALJ mistakenly believed that Dr. Moore's opinion was based on Golden's receipt of counseling from social worker Heidi Brown, which the ALJ determined Golden did not receive. (*Id.*) A thorough reading of the ALJ's decision, however, reveals that the ALJ discounted certain

7

portions of Dr. Moore's opinion that were inconsistent with Golden's own reports and the clinical findings of record. (Tr. at 15-16.)

Dr. Moore opined that Golden could follow, understand, and remember simple instructions, maintain attention and concentration for rote tasks, attend to a routine and maintain a schedule, and deal with low stress and perform simple tasks. (Tr. at 469.) However, Dr. Moore also concluded that Golden was moderately limited in her ability to maintain basic standards of hygiene and grooming and use public transportation. (*Id.* at 469.) Dr. Moore further indicated that Golden could not work a job that entailed "a great deal of social interactions with large groups of customers." (*Id.* at 470.) The ALJ explained that she gave "great weight" to the portions of Dr. Moore's opinion that were consistent with her clinical findings and Golden's treatment history. (*Id.* at 15.) On the other hand, Golden reported to her examining sources that she was independent in her personal care, cooked, cleaned, did laundry, shopped, provided childcare, watched television, read, and went to the park. (*Id.* at 15, 275.) On examination by Dr. Moore, Golden's general appearance was normal, her thought processes were coherent and goal directed, mood euthymic, affect appropriate to thought content, attention and concentration intact, memory

8

mildly impaired, and insight and judgment fair.  (*Id.* at 467.)  Dr. Moore noted that Golden laughed and smiled appropriately.  (*Id.*)  On adaptive behavior testing, Golden rated an average skills score in personal daily living skills, including her hygiene regimen.  (*Id.* at 468.)  Although intelligence testing revealed scores in the borderline range, Golden could read at a twelfth grade level, received her GED and certification as a nurse aid, completed one semester of college, and successfully engaged in competitive employment as a nursing assistant, leaving her most recent employer due to complications with her pregnancy.  (*Id.* at 14-15, 31, 465.)

With respect to Golden's receipt of counseling from Brown, as the ALJ correctly pointed out, Golden did not receive psychiatric treatment from Brown.  (*Id.* at 15.)  In a July 2010 letter to Golden's counsel, Brown asserted that she is not a medical provider offering psychiatric evaluations or prescribing medication to Golden, but, rather, offered "support and educational assistance" to Golden with respect to raising a child under the age of five years through a program with Catholic Charities.  (*Id.* at 473-74.)  Although Brown did "counsel" Golden on developing habits and routines that foster emotional and financial independence, parenting her children, and ways to cope with her emotional and physical challenges, the

9

ALJ did not err in her conclusion that Brown did not receive psychotherapy to treat her mental impairments during the relevant period. (*Id.* at 474.) Moreover, in June 2011, Golden reported to the Social Security Administration that she had received treatment for postpartum depression after the birth of her daughter in August 2009, but her depression had since improved a great deal, she had not received psychiatric outpatient treatment since 2007, and she did not feel that her mental impairments limited her ability to function on a daily basis. (*Id.* at 159.) Golden stated that she was able to concentrate and focus, and her problems were physical, as opposed to mental. (*Id.*)

Ultimately, the ALJ's determination that Golden's mental impairments caused only mild limitations of functioning, and were, therefore, not severe under the regulations, is supported by substantial evidence.[4]

**B.** **Non-Exertional Limitations**

Next, Golden argues that the ALJ erred in failing to include non-exertional limitations in her RFC determination. (Dkt. No. 14 at 9-13.) Specifically, Golden asserts that the ALJ should have included limitations

---

[4] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

resulting from her emotional problems, intellectual deficits, and the side effects of her medication. (*Id.*) The court disagrees.

A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 416.945(a)(3). An ALJ's RFC determination must be supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996). As relevant here, "[t]he basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to . . . respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, 1985 WL 56857 at *4 (1985).

In this case, as discussed above, the ALJ thoroughly considered the evidence of record with respect to Golden's mental impairments, and determined that they caused no more than mild functional limitations. *See supra* Part VI.A. Notably, Dr. Moore's opinion largely supports the ALJ's RFC determination. (Tr. at 468.) Further, Golden's own reports of her

11

functional capabilities provide substantial evidence to support the ALJ's mental RFC determination. (*Id.* at 159, 275.) As the Commissioner points out, Golden failed to complain to her treating or examining sources of the medication side effects she now argues limit her functional abilities. (Dkt. No. 15 at 12; Dkt. No. 14 at 12-13; *see generally* Tr. at 274-75, 288, 309, 311, 339-40.) In April 2011, Golden failed to report any side effects of her prescribed medications, but noted that they provided some relief. (*Id.* at 226.) In addition, on the only mental status examination of record, Golden's attention and concentration were intact, and her memory was only mildly impaired. (*Id.* at 467.) The ALJ's decision is, therefore, affirmed.

## C.   Obesity

Finally, Golden contends that the ALJ failed to properly consider the functional effects of her obesity. (Dkt. No. 14 at 13-14.) In particular, Golden complains that the ALJ based her RFC determination on the lack of objective evidence supporting Golden's lumbar impairments, ignoring her treating sources' opinions that her condition is caused by her obesity and macromastia. (*Id.*) Again, the court disagrees.

Controlling weight will be given to a treating source's opinion on the

12

nature and severity of a claimant's impairments where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 416.927(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). When a treating source's opinion is given less than controlling weight, the ALJ is required to consider the following factors: the length, nature and extent of the treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner. *See* 20 C.F.R. § 416.927(c)(2)-(6). The ALJ must provide "good reasons for the weight given to the treating source's opinion." *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (internal quotation marks and citations omitted). "Nevertheless, where the evidence of record permits [the court] to glean the rationale of an ALJ's decision," it is not necessary that the ALJ "have mentioned every item of testimony presented to h[er] or have explained why [s]he considered particular evidence unpersuasive or insufficient to lead h[er] to a conclusion of disability." *Id*. (internal quotation marks and citation omitted).

    Here, the ALJ considered the treating records and November 2011

opinion of Dr. Denzien with respect to Golden's functional limitations.[5]  (Tr. at 17-19.)  However, as noted by the ALJ, Dr. Denzien's treatment notes on the date that she completed her opinion indicate far greater clinical findings than Golden's previous exams.  (*Id.* at 17, 288-89, 309-11, 427-28.)  Specifically, one month prior to Dr. Denzien's November 2011 examination, which revealed an antalgic gait, slightly decreased deep tendon reflexes, positive straight leg raising on the right side, decreased range of motion of the back, and tenderness in the thoracic and lumbar spine, an examination by treating neurosurgeon Daniel Galyon revealed "fairly fluid" lumbar movements, "totally negative" straight leg raising, 5/5 strength in all tested muscle groups, and intact sensation to pinprick throughout.  (*Id.* at 288-89.)  Dr. Galyon explained that Golden's MRI revealed disc deterioration with a protrusion towards the left side, but concluded that "she really does not seem to be actively symptomatic," and surgery was not recommended.  (*Id.* at 288.)  The ALJ also noted that the record contained no reports of an intervening injury or diagnostic evidence of any deterioration.  (*Id.* at 17.)

  Thus, in determining that Golden retained the RFC to perform

---

[5] According to Dr. Denzien, due to thoracic pain and a herniated disc, Golden could not stand for two hours or sit for six hours in a work day.  (Tr. at 406-09.)  In addition, Golden could not lift more than five pounds, her concentration was severely diminished because she needed to reposition often, and her work pace would be severely impaired.  (*Id.* at 407.)

sedentary work, the ALJ discounted the opinion of Dr. Denzien, and, instead, relied on the May 2011 opinion of consulting examiner Karl Eurenius that Golden was limited in her ability to stand for prolonged periods, perform frequent bending, walk more than one-quarter of a mile, climb or descend more than one flight of stairs, and lift, carry, push and pull. (*Id.* at 17-18.) The ALJ also considered Golden's ability to lift her child, inconsistencies in her testimony and her reports to treating and examining sources, and Golden's failure to attend physical therapy, despite her report to Dr. Denzien that she attended twice a week. (*Id.* at 18-19.)

The court notes that Dr. Denzien's opinion indicated that Golden's herniated disc, and not the thoracic pain caused by her macromastia, was her disabling condition. (*Id.* at 309-10, 408.) Thus, Golden's argument that her treating providers "very specifically and over and over again instructed" the ALJ that Golden's limitations were caused by her obesity and macromastia, is without merit. (Dkt. No. 14 at 13-14.) Further, as the Commissioner points out, the ALJ's determination that Golden was restricted to performing sedentary work fully accounts for the limitations

stemming from her obesity.[6] (Dkt. No. 15 at 13.)

In sum, The ALJ considered all the relevant evidence, and her RFC determination is supported by substantial evidence.

## D.  Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Golden's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 16, 2014
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court

---

[6] Under the regulations , "[s]edentary work involves lifting no more than [ten] pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F.R. § 416.967(a).  Further, a sedentary job is defined as one which involves sitting, and, thus, "periods of standing or walking should generally total no more than about [two] hours of an [eight]-hour workday, and sitting should generally total approximately [six] hours of an [eight]-hour workday."  SSR 83-10, 1983 WL 31251, at *5 (1983).

16